In the Matter of the Claim of JOHN M. BROWN, Respondent, *v.* INTERSTATE MOTOR FREIGHT SYSTEM, INC., Appellant, and SPECIAL FUND FOR REOPENED CASES, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, April 21, 1969.

*Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer* (*Martin F. Kendrick* of counsel), for appellant.

*Manuel Fineberg* for claimant-respondent.

*John M. Cullen* for Special Fund for Reopened Cases, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Daniel Polansky* and *Julius Fell* of counsel), for Workmen's Compensation Board, respondent.

GIBSON, P. J. Appeal is taken by a self-insured employer from a decision of the Workmen's Compensation Board. With respect to a Referee's decision reopening claimant's 1953 accident case, the board rescinded the decision, closed the case on the prior schedule award for a 75% loss of use of the right arm and discharged the Special Fund for Reopened Cases under section 25-a; and with respect to a Referee's decision in claimant's 1962 accident case apportioning claimant's disability due to a back condition, three fourths to the 1953 accident and one fourth to the 1962 accident, and imposing proportionate liability upon the Special Fund, the board modified the decision by finding claimant to be suffering from a 50% disability causally related to the 1962 accident, and by making an award for reduced earnings, solely against the self-insured employer.

The 1953 accident occurred when the tractor-trailer operated by claimant overturned, causing claimant to sustain injuries to his arm and his back. The 1962 accident occurred when claimant jumped off his truck, slipped and fell, sustaining back injuries which necessitated a laminectomy in 1965 and caused or contributed to the disability for which the award now before us was made.

The board's denial of any causative effect to the 1953 accident, as respects the disability ensuing after the 1962 accident,

is unsupported by substantial evidence. Dr. Neptune and Dr. Vosburgh gave the only medical evidence pertinent to this issue. Dr. Neptune, who had performed the laminectomy in 1965 and who had treated claimant from 1953 on, testified on April 11, 1966 that claimant's disability was due to both accidents; that the 1962 accident aggravated the 1953 back injury; and that the 1953 incident was "the major injury" and responsible for 75% of the back condition. Dr. Vosburgh, who had examined claimant in 1964 and again in 1965, testified on April 11, 1966, and, he, too, attributed causality to both accidents; and he agreed with Dr. Neptune's apportionment of 75% responsibility to the 1953 accident and 25% to that of 1962. The basis for the board's rejection of the only medical evidence of causation seems to have been its finding "that on the date of the [1962] accident * * * claimant had no disability from any back condition sustained in the 1953 accident and had been working at full wages for many years without back complaints or loss of earnings." There is no indication in the decision that the board questioned either the professional competence or the credibility of these physicians; and the lay opinion of the board panel members that a latent back injury did not exist, in the absence of "back complaints or loss of earnings", does not, of course, substitute for substantial evidence in contravention of expert opinion evidence.

In its brief, respondent Special Fund alludes to a negative myleogram report at one time made; but a bare report, without medical analysis or elaboration, cannot be given effective weight. There was, indeed, uncontradicted medical testimony that a myleogram does not always disclose an existing herniation. The same brief cites testimony by claimant as to his condition, but his impressions cannot be accepted over contrary professional diagnoses. (*Matter of Capuano* v. *Ideal Roller & Mfg. Co.*, 24 A D 2d 792, 793.) Dr. Neptune stated that the fact that claimant's condition may have been asymptomatic for a period did not change his opinion that the 1953 injury was the major causative factor. A somewhat similar situation obtained in *Matter of Palmeri* v. *du Pont de Nemours & Co.* (3 A D 2d 782, mot. for lv. to app. den. 3 N Y 2d 705). Indeed, and despite respondent's contentions, it is not entirely clear that claimant's condition was ever asymptomatic. Dr. Vosburgh felt that it had not been. Dr. Neptune, as early as 1956, reported that "in view of the extensive nature of this claimant's injuries and especially in view of the low back condition which I believe is a ruptured disc, I feel that closing this case at this time would only later necessitate a re-opening"; and

although Dr. Neptune in 1958 reported his belief that the back condition was in a state of remission, he referred at the same time to his prescription of a very firm orthopedic mattress and companion box springs, and ultimately, of course, found that the 1953 condition had continued in latent form until its aggravation in 1962. There exists no substantial evidence of the sole causation found by the board, in the light of the record viewed as a whole. (*Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works*, 304 N. Y. 65, 71; *Matter of McCormack* v. *National City Bank of N. Y.*, 303 N. Y. 5, 9.)

This conclusion renders necessary an examination of two additional contentions advanced by respondent Special Fund. First, the Fund seeks to support the board's conclusion that '' in the light of the provisions of Section 25a of the Workmen's Compensation Law which refers to ' an application made by an employee ', we find that case #65308579 should not have been reopened. '' (The decision misquotes the statutory language, and the error is substantial and misleading.) The '' application '' to which the statute refers and which the statute indicates is to be made by the employee, is not the application to reopen, as the board and the respondent alike suggest, but '' an application *for compensation* * * * made by an employee '' (Workmen's Compensation Law, § 25-a, subd. 1; emphasis supplied). Such an application by the employee instituted this claim, of course; and it is an exceptional case indeed in which a claim is initiated otherwise. The statute mandates the result which the Referee arrived at and the board rescinded, providing, so far as here pertinent, that '' when an application for compensation is made by an employee * * * (2) after a lapse of seven years from the date of the injury * * * and also a lapse of three years from the date of the last payment of compensation * * * testimony may be taken, either directly or through a referee and if an award is made it *shall be* against the special fund provided by this section. '' (Workmen's Compensation Law, § 25-a, subd. 1; emphasis supplied.) That section 25-a does not limit applications to reopen to those made by employees was recognized by the board itself in promulgating its rules, one providing that an '' application may be made by *any party in interest* for rehearing or *reopening* of a claim '' (emphasis supplied) and another referring to an application '' made by the employer, carrier or Special Fund for Reopened Cases for further consideration of a claim under Rules 13 and 14 ''. (General Rules and Procedure of the Workmen's Compensation Board, rules 14, 15, subd. [a]; 12 NYCRR 300.14 [a],

300.15 [a].)  It seems clear that the board erred in holding that an application to reopen made by claimant was necessary to a reopening.  The seven-year and three-year provisions having been met and claimant's present disability being attributable in some degree to the 1953 accident, " the provisions of section 25-a are clearly applicable " and the Referee acted correctly in reopening the case.  (*Matter of Becker* v. *Marcy State Hosp.*, 264 App. Div. 643, 644.)

Finally, we reach respondent Special Fund's contention that before the board can apportion liability as between the self-insured employer and the Special Fund, it is required to rescind the prior schedule award and credit the Special Fund's liability by the amount of the payments made under that award. This contention overlooks the fact that, as in *Matter of Mohr* v. *Julius D. Braasch, Inc.* (9 A D 2d 802, 803, mot. for lv. to app. den. 7 N Y 2d 710), the awards, following separate accidents, were for " separate and distinct disabilities ". In *Mohr*, the first award was a schedule award for a 20% loss of use of the right leg; here it was for a 75% loss of use of the right arm; in *Mohr*, as here, a back injury was incurred in the first accident but no award was made for it, and in each case, following the second accident, claimant's disability due to a back condition was found due to both accidents. In *Mohr*, we held that " the board was correct in refusing to allow credit to appellant for the compensation it had paid for the 20% schedule loss of a leg. " It follows that respondent Special Fund is not entitled to such a credit here.

The decision should be reversed, with costs to appellant, and the case remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith.

HERLIHY, REYNOLDS, STALEY, JR., and COOKE, JJ., concur.

Decision reversed, with costs to appellant, and case remitted to the Workmen's Compensation Board for further proceedings not inconsistent with the opinion herein.